IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
KERRY ATKINSON,                    )
                                   )    02:04-cv-2010-GEB-JFM
                Plaintiff,         )
                                   )
        v.                         )    ORDER*
                                   )
METROPOLITAN LIFE INSURANCE        )
COMPANY, AT&T SHORT TERM           )
DISABILITY PLAN FOR MANAGEMENT     )
EMPLOYEES, AT&T LONG TERM          )
DISABILITY PLAN FOR MANAGEMENT     )
EMPLOYEES,                         )
                                   )
                Defendants.**      )
_____)
```

Pending are the parties' cross-motions for summary judgment or summary adjudication on Plaintiff's action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. Plaintiff challenges the denial of her claim for benefits under the

---

\*   These motions were determined to be suitable for decision without oral argument.  L.R. 78-230(h).

\*\*   The caption has been changed to reflect the Amended Complaint filed November 18, 2005.

1

AT&T Short Term Disability Plan for Management Employees ("STD Plan").[1]

## BACKGROUND

The STD Plan is a self-funded employee benefit plan governed by ERISA. (Administrative Record ("AR") at 476.) BCAC acts as the STD Plan administrator. (Pl.'s Statement of Undisputed Facts ("PUF") at 2.) Defendant, Metropolitan Life Insurance Company ("MetLife") acts as the third-party claims administrator for the STD Plan. (Defs.' Statement of Undisputed Facts ("DUF") at 6; AR at 25.) Any benefit determination made by MetLife under the STD Plan may be appealed to BCAC. (DUF at 2.) BCAC has sole discretion on benefit determinations under the STD Plan, which are conclusive and binding on all parties and not subject to further review. (Id.)

Prior to January 24, 2003, Plaintiff worked for AT&T. (AR at 159.) As a "management" employee of AT&T, Plaintiff was eligible to apply for disability benefits under the STD Plan. (AR at 113.) On January 24, 2003, Plaintiff ceased being actively employed by At&T. (DUF at 12.) On March 7, 2003, fourteen days after AT&T eliminated Plaintiff's job, Plaintiff submitted a provider's report ("Report") to MetLife as part of a claim for disability benefits under the STD Plan. (DUF at 18.) Prior to making her claim for benefits, but while still employed by AT&T, Plaintiff took off one week per month to treat her back pain under the Family and Medical Leave Act ("FLMA"). (PUF at

---

[1] Plaintiff also seeks to recover disability benefits under the AT&T Long Term Disability Plan for Management Employees ("LTD Plan"). However, an employee is not eligible for LTD Plan benefits unless he/she has received benefit under the STD Plan. Therefore, Plaintiff's claim for LTD Plan benefits depends on establishing that she was wrongfully denied benefits under the STD Plan.

2

5.) Plaintiff claimed in the report, her entitlement to short term disability benefits from January 2004 to March 2004. (PUF at 5.)

Plaintiff's treating physician, Dr. Scott MacDonald, completed the Report. (DUF at 19.) Dr. MacDonald diagnosed Plaintiff with "degenerative disk disease," found she was unable to sit "for even short periods of time," and concluded she was "disabled." (Id. at 21-22.) He noted, however, that Plaintiff could sit for twenty minutes, stand for ten minutes, and walk for an hour, could climb, reach above shoulder level, operate a motor vehicle, and had no impairment of psychological functions. (Id. at 23-24.) The section in the Report concerning "objective evidence of disability" was left blank. (Id. at 26.)

Along with the Report, Plaintiff also submitted one page of progress notes from Dr. MacDonald dated October 17, 2002; a one page Magnetic Resonance Imaging scan dated May 20, 2002; and a letter from Dr. Paul Kreis to Dr. MacDonald dated November 21, 2002.[2] (Id. at 27.) Dr. Kreis's letter revealed Plaintiff was evaluated for subjective complaints of lower back pain. (Id.) Dr. Kreis noted Plaintiff's latest epidural steroid injection treatments provided "excellent relief with a 60% reduction in her pain for two weeks." (Id. at 28.) Dr. Kreis opined that Plaintiff's treatment permitted her to engage in physical therapy and other activities of daily life. (Id. at 29.)

---

[2] Plaintiff agrees that these were the only documents submitted on March 7, 2003. Plaintiff contends, however, that Dr. Kreis's letter also contains an evaluation of a Computerized Tomography Scan and diskography. (Pl.'s Response to DUF at 31.) These evaluations do not appear to be part of the Administrative Record and, if they are, Plaintiff fails to indicate where they are located.

On March 13, 2003, MetLife contacted Plaintiff by telephone to inform her that her claim was denied. (DUF at 40.) MetLife later confirmed this telephonic communication in writing. (Id. at 42.) On March 21, 2003, Plaintiff was allowed to submit further documentation on her claim to MetLife following the initial denial on March 13, 2003. (Id. at 44.) On March 28, 2003, MetLife denied Plaintiff's claim in writing for a second time. (Id. at 52-53.)

In the March 28 denial letter MetLife explained Plaintiff's claim was denied pursuant to paragraph 4.10 of the STD Plan.[3] (Id. at 53.) MetLife listed several reasons for the denial. It noted that Plaintiff had been treated for degenerative disk disease since 1994, and that she had received an epidural steroid injection for that condition up to six times per year since 1994. (Id. at 54.) MetLife also referred to Plaintiff's acupuncturist's statement that there was "a noticed improvement [in Plaintiff's condition] with the treatment plan." (Id. at 55.) Further, MetLife referenced Dr. MacDonald's observation that Plaintiff could "sit for 20 minutes, stand for 10 minutes, walk for one hour, lift 20 pounds occasionally, climb, reach above shoulder level, and operate a motor vehicle." (Id. at 56.)

On July 31, 2003, Plaintiff appealed MetLife's decision to BCAC. (Id. at 58.) Plaintiff claimed that the notes provided by Dr.

---

[3] Paragraph 4.10 states: "A disabled employee shall not be entitled to Disability Benefits if he declines to permit the Committee (BCAC) to make or have made by a physician from time to time, such examinations as the Committee may deem necessary in order to ascertain the Employee's condition, or if he fails to give proper information respecting his condition, or if he prevents the necessary examination by absenting himself from home without arranging with the Committee, or giving satisfactory reasons for not doing so, and furnishing the necessary evidence or if he fails to comply with notice to meet the Committee, at its offices or elsewhere, when his condition and location permit of his doing so."

4

1  MacDonald were "the most complete notes" available, and reiterated her
2  symptoms. (Id. at 59-60.)  Plaintiff also included with her appeal a
3  four-page claim report listing prescription purchases from May 2000
4  through April 2003, and a note from a physical therapist dated
5  March 21, 2003, that stated Plaintiff was evaluated on January 13,
6  2003. (Id. at 61.)
7          Plaintiff's appellate claim file was forwarded to Dr. Robert
8  Porter, a doctor certified in occupational medicine, for review. (Id.
9  at 62-63.) Dr. Porter considered Plaintiff's degenerative disk
10 disease ailment a common condition, and found that Plaintiff's
11 objective evidence was not of "clinical significance." (Id. at 64.)
12 Further, he found that Plaintiff's condition and symptoms did not
13 support absence from "sedentary" work for longer than seven days. (AR
14 at 354.) Dr. Porter also found that without evidence of nerve root
15 impingement or instability in the back, there was insufficient
16 evidence supporting Plaintiff's contention that she was unable to
17 perform her job. (Id. at 65).
18          BCAC upheld MetLife's decision that denied Plaintiff's claim
19 for benefits on October 6, 2003. (Id. 69.) BCAC informed Plaintiff
20 that its in-house medical advisor had come to the conclusion that
21 MetLife's decision was correct. (Id. at 69, 74.)
22          On July 12, 2004, Plaintiff's attorney sent a letter to
23 MetLife and additional medical records in support of Plaintiff's claim
24 for benefits, stating Plaintiff may have previously failed to submit
25 sufficient evidence of disability. (Id. at 75, 77.) On
26 August 10, 2004, Plaintiff's attorney sent another letter to Metlife
27 and medical records from Plaintiff's visit to the UC Davis Pain
28 Management Clinic on June 17, 2004,. (Id. at 76.) On August 5, 2004,

1  BCAC's secretary called MetLife to retrieve the additional documents
2  sent by Plaintiff's attorney.  (Id. at 78.)  Subsequently, BCAC
3  advised MetLife that it would not hear a further appeal because the
4  time for appeal had lapsed; however a medical advisor for BCAC
5  evaluated Plaintiff's entire appellate claim file, which included the
6  documentation Plaintiff's attorney sent on July 12, 2004, and
7  August 10, 2004.  (Id. at 79-81.)  The medical advisor concluded that
8  the original denial was appropriate.  (Id.)

## DISCUSSION

### I. Standard of Review

A "denial of benefits challenged under ERISA is reviewed de novo unless the benefit plan gives the fiduciary or administrator discretion to determine eligibility for benefits or construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  If such discretion is given the court reviews the denial decision for an abuse of discretion.  Id.; see also Bendixen v. Standard Ins. Co, 185 F.3d 939, 942 (9th Cir. 2005).  But if a plan administrator vested with such discretion acted under a conflict of interest, the standard of review may become de novo.  Atwood v. Newmont Gold Co., Inc., 45 F.3d 1317, 1322-23 (9th Cir. 1995).

The parties agree that the STD Plan vests BCAC with "sole and complete discretionary authority" to determine benefit eligibility.  (DUF at 3.)  Plaintiff, however, argues the de novo standard of review applies because BCAC is both the funding source and administrator of the STD Plan.  Defendants concede that BCAC's dual role as funding source and plan administrator creates an apparent conflict of interest, but argue Plaintiff has not established that

this apparent conflict requires application of a de novo standard of review.

"[An] abuse of discretion standard [is applied] to the decisions of [an] apparently conflicted [plan administrator] unless the affected beneficiary comes forward with . . . material, probative evidence . . . tending to show that the [plan administrator's] self-interest caused a breach of [its] obligations to the beneficiary." Atwood, 45 F.3d at 1322-23.  Since Plaintiff has not made this showing, the abuse of discretion standard of review applies in this action.

II. Review of BCAC's Decision[4]

Under the abuse of discretion standard BCAC's decision is reviewed "to determine whether it is 'so patently arbitrary and unreasonable as to lack foundation in factual basis.'" Cervantes v. Metropolitan Life Ins. Co., 388 F. Supp. 2d 1164, 1169 (E.D. Cal. 2005) (quoting Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1471 (9th Cir. 1993)).  Three inquiries are generally made under this standard of review: (1) whether a denial was given without explanation, (2) whether there is a clearly erroneous finding of fact, or (3) whether the decision conflicts with the plan's plain meaning. Snow v. Standard Ins. Co., 87 F.3d 327, 331 (9th Cir. 1996). Plaintiff argues that BCAC abused its discretion when it denied her claim because: (1) the decision was inadequately explained to her, (2)

---

[4] Plaintiff argues that the initial decisions of MetLife were incorrect and should be reviewed by this Court independently of BCAC's decision.  However, BCAC rendered the final administrative decision on Plaintiff's disability claim, and only that decision is being reviewed. Burke v. Pitney Bowes, Inc. Long-Term Disability Plan, No. C 04-4483, slip op. at 4 n.2, 2006 WL 13097 (N.D. Cal. Jan. 3, 2006) (citing Abatie v. Alta Health & Life Ins. Co., 421 F.3d 1053, 1062 (9th Cir. 2005)).

there were clearly erroneous findings of fact, and (3) BCAC's interpretation of "disability" conflicts with the STD Plan's language.

MetLife informed Plaintiff on March, 13, 2003, her claim was going to be denied for failure to provide adequate information on her disability. (DUF at 40.) Plaintiff was subsequently allowed to send more information to MetLife regarding her claim, which she did on March 21, 2003. (Id. at 44.) MetLife then sent a detailed letter to Plaintiff in which it cited section 4.10 and explained why all the information she had provided was inadequate. (Id. at 53.) MetLife explained that based on the information provided Plaintiff could perform the functions of her job with AT&T. (Id. at 52-57.) Specifically, MetLife referenced Plaintiff's treating physician's report that stated Plaintiff could sit for twenty minutes, walk for ten minutes, and stand for an hour; and Plaintiff's acupuncturist who opined that treatments were generating a "noticed improvement" in Plaintiff's condition. (DUF at 52-57.)

Plaintiff also submitted more information directly to BCAC in July of 2003. (Id. at 61.) BCAC denied her claim based on the lack of objective evidence in her file. (Id. at 69.) Another letter was sent to Plaintiff that explained the evidence submitted did not indicate a level of severity or impairment that would prevent Plaintiff from working. (DUF at 74.) BCAC provided Plaintiff sufficient information about the grounds for the denial of her claim in its letter to her, and thus did not abuse its discretion under this factor.

Plaintiff also argues that the review of her medical information resulted in BCAC issuing clearly erroneous findings of fact. Plaintiff contends that her subjective opinion of her ability

to work should outweigh the objective medical evidence BCAC found to the contrary.  Plaintiff argues that though her job was sedentary, she could not perform the limited tasks it required.[5]  She points to her own testimony and her monthly FMLA leave as evidence that her pain rendered her unable to work. (AR 233.)  She also argues that while her treating physician, Dr. MacDonald, said she could sit for twenty minutes, stand for ten minutes, and walk for an hour, he did not say she could do this repetitively throughout the course of a day.  She contends that her pain prevented repetitive movements, and that despite a sit/stand option at her job she was unable to fully perform all of her job functions.  She claims that her condition was worsening, and cites as evidence of this a rise in the number of medical consultations, her FMLA leave, her subjective statements, and her request for Intradiscal Electrothermal Therapy.[6]  (PUF at 5.)

     BCAC found there was insufficient evidence to support a finding of objective impairment that would fully prevent Plaintiff from performing the functions of her job.  Defendant based this finding upon its review of Dr. Porter's evaluation, Plaintiff's entire claim file, and Plaintiff's own evidence.  (DUF at 74.)

     In his evaluation, Dr. Porter noted that degenerative disk disease a common ailment, and found that Plaintiff's condition and symptoms did not support more than a week's absence from "sedentary"

---

[5]  Plaintiff makes inconsistent arguments about the nature of her job, but "does not dispute her job was sedentary."  (Pl.'s Reply to Def.s' Opp. to Pl.'s Mot. Summ. J. at 7.)  Plaintiff's own statements indicate she could change between sitting and standing positions to alleviate her pain, even though doing so made it harder for her to get work done.  (AR 339.)

[6]  Plaintiff also states she was in two car accidents, but this contention is not supported by any evidence.

9

work.  (Id. at 64; AR at 354.)  Specifically, Dr. Porter's found that the evidence submitted by Plaintiff was not of "clinical significance," and that "without evidence of nerve root impingement or instability in the back, there was not valid evidence of disability." (Id. at 63-65.)

Additionally, Defendants assert Plaintiff's own physician found she could sit for twenty minutes, walk for an hour, stand for ten minutes, drive, reach above shoulder level, and had no impairment of psychological function.  (DUF at 20-26.)  Defendants note that Dr. McDonald left blank the section of the Report entitled "objective evidence of disability."  (Id. at 26.)  Defendants also point to Plaintiff's acupuncturist's finding that Plaintiff's treatment plan was creating a noticeable improvement in her pain.  (Id. at 55.) Defendants argue that based on all available evidence, Plaintiff was able to work at her job with the condition and no objective medical evidence supported a finding to the contrary.

BCAC's factual determination that Plaintiff was not disabled under the STD Plan is not clearly erroneous simply because it gave greater weight to the objective evidence in Plaintiff's claim file than the subjective evidence Plaintiff presented.  The use of an objective test for evaluating benefit claims under ERISA is not unreasonable per se.  Voight v. Metropolitan Life Insurance Co., 28 F. Supp. 2d 569 (C.D. Cal. 1998) (allowing the administrator to rely on objective medical evidence).  BCAC relied on valid evaluations of a board certified physician specializing in occupational medicine who found Plaintiff was not impaired from performing the tasks of her sedentary job.  BCAC also accorded Dr. Porter's evaluation great weight, and considered Plaintiff's doctor's evaluation which

1 reaffirmed she could perform light work and was not entirely prevented
2 from engaging in basic tasks.  Consequently, BCAC's decision was not
3 based on clearly erroneous findings of fact.
4         Finally, Plaintiff argues BCAC's decision conflicts with the
5 STD Plan's definition of disability.  Defendants have proffered a
6 definition of disability derived from the STD Plan description which
7 defines a person as "disabled" if:

> "The Claims Administrator (MetLife) determines that you are unable to perform the duties of your job and you cannot be accommodated at another job within the Company (AT&T)."

10 (AR at 465.)  Plaintiff has neither shown this definition of
11 disability is deficient nor that BCAC used another definition.  This
12 definition of disability clearly requires "that [a claimant] be unable
13 to perform the duties of her job or another job within the Company."
14 (AR at 465.)  Here, BCAC found Plaintiff could still perform the
15 duties of her job with AT&T because her job was "sedentary" and Dr.
16 Porter found that any work loss at her "sedentary job" for more than
17 seven days was unsupported by her medical record.  (Id. at 64; AR at
18 354.)  Thus, BCAC's decision does not conflict with the STD Plan's
19 definition of disability.

                              CONCLUSION

21         For the reasons set forth above, Defendants' motion for
22 summary judgment is granted, and the Clerk of the Court shall enter
23 judgment in favor of Defendants.
24         IT IS SO ORDERED.
25 Dated:  March 10, 2006

                                    /s/ Garland E. Burrell, Jr.
                                    GARLAND E. BURRELL, JR.
                                    United States District Judge